UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-278-GWU

ROSE E. JOHNSON,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

1

07-278  Rose E. Johnson

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

07-278  Rose E. Johnson

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

07-278  Rose E. Johnson

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-278  Rose E. Johnson

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-278  Rose E. Johnson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

07-278  Rose E. Johnson

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Rose E. Johnson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, degenerative disc disease of the lumbosacral spine, chronic obstructive pulmonary disease/asthma/bronchitis, and bilateral osteoarthritis of the knees. (Tr. 20). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 23-9). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 39, high school education, and work experience as an assistant manager and cook could perform any jobs if she were limited to "light" level exertion with a requirement of standing, walking and sitting a total of no more than six hours in an eight-hour day, and "a sit/stand option with no walking or standing in excess

07-278  Rose E. Johnson

of one and a half hours without interruption," and also had the following non-exertional restrictions.  (Tr. 414-15).  She: (1) could only occasionally push or pull or use foot controls with the lower extremities; (2) could occasionally climb stairs or ramps, but never more than one flight of stairs at a time; (3) could occasionally balance, stoop, kneel, or crouch; (4) could never crawl; (5) needed to avoid concentrated exposure to extreme heat, humidity, hazards such as unprotected heights and dangerous machinery, and full body vibration; and (6) needed to avoid concentrated exposure to fumes, odors, dust, and gases.  (Tr. 415).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 416-17).[1]

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff, who testified at the time of the administrative hearing that she weighed 368 pounds at a height of five feet three inches (Tr. 387), alleged disability due to shortness of breath and related problems due to chronic obstructive

---

[1]The ALJ ultimately limited the plaintiff to standing and walking no more than thirty minutes without interruption.  (Tr. 23).  However, the VE testified that the number of jobs the hypothetical individual could perform would start to be affected if the sitting and standing limitations reached the 15-minute level.  (TR. 419).  Therefore, the inconsistency would not appear to affect the reliability of the VE's testimony.

pulmonary disease, kidney disease, "5 herniated discs in back," and muscular degeneration in the back.  (Tr. 122).  She testified that her weight varied and was somewhat on the high side at the time of the hearing.  (Tr. 388).  She had stopped work because of back problems after a motor vehicle accident in June, 2003, which resulted in pain and left leg numbness.  (Tr. 389, 391).  She stated that both her legs and her arms would go numb, but her main pain was in her back and knees. (Tr. 394).  She could not afford pain medication.  (Tr. 395).  Nor had she been able to afford spinal injections recommended by a neurosurgeon.  (Tr. 395-6).  She could not sit or stand more than 15 minutes continuously without making her pain worse. (Tr. 397).  She also had a limited ability to drive because of back pain and leg numbness, but could drive 33 miles to her mother's house without stopping.  (Tr. 389).  She tried to do housework three days a week, such as dusting and washing dishes, but would have to sit down frequently; she had also tried mowing one time and could not do it.  (Tr. 394, 396).  She continued having breathing problems despite the use of an inhaler and a nebulizer, and could not afford the home oxygen she had been prescribed.  (Tr. 401-2).  Her family physician, Dr. McBrayer, had recommended that she walk for exercise, and she attempted to use a treadmill but was out of breath after ten minutes and her back also hurt.  (Tr. 398-9).  Finally, the plaintiff testified that she had been born with one kidney and it was "diseased." (Tr. 393).  She was taking a medication for depression, but received no outpatient

treatment and stated that she did not really have a problem with being in crowds. (Tr. 401).

Medical records in the transcript include reports from the emergency room at Pattie A. Clay Hospital indicating that the plaintiff was seen with complaints of neck and upper back pain after a motor vehicle accident on June 17, 2003.  (Tr. 223).   X-rays were unremarkable (Tr. 226), and she was discharged with an assessment of a "strain" and advised not to perform any heavy work with her upper torso for three to five days.  (Tr. 224).  However, an MRI of the lumbosacral spine in July, 2003 showed degenerative disc disease at L5-S1 with left lateral recess focal disc protrusion and resultant neuroforaminal narrowing.  (Tr. 338).   The plaintiff was referred to Dr. John Gilbert, a neurosurgeon, who performed an examination on October 22, 2003.  She complained of low back pain with left leg numbness and cramping. (Tr. 180).  Dr. Gilbert's examination showed a decreased range of motion of the lumbar spine with no spasm and grossly normal reflexes and sensation.  (Id.).  He reviewed the MRI as well as physical therapy reports and diagnosed a long list of conditions, including lumbar lumbago, strain/sprain, sciatica, lumbar herniated nucleus pulposus and degenerative disc disease, obesity, anxiety, and cervical radiculopathy.  (Id.).  He also diagnosed muscle spasms although his narrative report specifically stated that his examination had been negative for spasms.  In any case, he recommended epidural steroid injections and encouraged

07-278  Rose E. Johnson

the plaintiff to lose weight from her current 268 pounds to "at least" 180 pounds. (Tr. 180-1).  As previously noted, the plaintiff testified that she was unable to afford the injections and there are no records of further visits to this source.  Dr. Gilbert did not list any functional restrictions.

The plaintiff's treating family physician, Dr. Frank McBrayer, wrote a letter in December, 2003 indicating that his patient had been diagnosed as having only one kidney after a CT scan of the abdomen in 2001 (Tr. 342) and subsequent testing had showed a continued increase in the protein levels in her urine due to kidney disease (Tr. 306).  She had been referred to a nephrologist, Dr. Rizwan Akhtar, for her kidney problem and high blood pressure.  (Id.).  She had been referred to Dr. Gilbert and a Dr. Brooks for her low back injury, and Dr. McBrayer stated that Dr. Gilbert wanted to perform surgery.  (Id.).  She was temporarily disabled for the next three months, or longer if Dr. Gilbert did surgery.  (Id.).  As previously indicated, however, there is no indication in Dr. Gilbert's office notes that he intended to do surgery.  Dr. Akhtar's notes indicate that the plaintiff was morbidly obese, had proteinuria, and was on medication for high blood pressure.  (Tr. 164).  He recommended weight loss counseling and that she watch her fluid and salt intake, but did not list any functional restrictions.  (Tr. 161).

Dr. McBrayer provided a prescription pad note on July 22, 2004 stating that his patient remained totally disabled (Tr. 304), and wrote a letter dated August 9,

11

07-278  Rose E. Johnson

2004 also referring to "permanent disability" (Tr. 303).  On October 3, 2005, Dr. McBrayer submitted a medical report indicating that the plaintiff's problems were her excess weight, asthma, shortness of breath, edema, hypertension, anxiety, and spine and joint abnormalities.  (Tr. 296).  He diagnosed "severe" lumbar disc disease and "moderate" nephrotic syndrome, generalized anxiety disorder, and asthma.  (Tr. 297).  He opined that his patient would be limited to lifting ten pounds occasionally and five pounds frequently, standing or walking no more than two hours in an eight-hour day (no more than 15 minutes without interruption), sitting eight hours (no more than 45 minutes without interruption), "never" performing any postural activities, and having restrictions on reaching, handling, feeling, pushing, pulling, and working around temperature extremes, chemicals, dust, and fumes. (Tr. 297-8).  She had poor or no ability to deal with the public and a "seriously limited but not precluded" ability to relate to coworkers, interact with supervisors, and deal with work stresses.  (Tr. 299).

On November 21, 2006, Dr. McBrayer provided a somewhat different list of limitations including the ability to lift five pounds occasionally and nothing frequently, stand or sit 15 minutes at one time, and work no hours per day, but also stating that she "can tolerate" dust, smoke, and fumes despite his diagnosis of emphysema, chronic bronchitis, and asthma and his indication that oxygen had been prescribed. (Tr. 362-3).

12

07-278  Rose E. Johnson

The ALJ declined to accept Dr. McBrayer's limitations, because they were not supported by objective findings in his office notes, which included references to mild to moderate wheezing, "clear" lungs, muscle tightness, tenderness, and pain on range of motion testing of the back.  (Tr. 25).

Dr. Joseph Koenigsmark conducted a consultative examination of the plaintiff on January 26, 2005.  His examination showed a blood pressure of only 108/78, and the plaintiff had clear breath sounds although there were wheezes in the lower lung fields.  (Tr. 236).  A pulmonary function test showed only mild restriction without significant obstruction.  (Tr. 241).  There was no clubbing or cyanosis of the extremities and only mild edema in the legs.  (Tr. 236).  Both knees had crepitus. Her back was non-tender, with no spasm or scoliosis, and straight leg raising was negative.  (Id.).  Her gait was somewhat wobbling because of her size, but station was good once her feet were planted, and she was able to heel and toe walk although she had only a fair knee squat.  (Id.).  Dr. Koenigsmark's impression was probable mild to moderate chronic obstructive pulmonary disease with asthma, probable osteoarthritic changes of the lower lumbar spine, probable renal disease by history, endogenous obesity, and high blood pressure.  (Tr. 237).[2]  He indicated that at the time of the examination, the plaintiff was able to sit, stand, move about

_____

[2]Dr. Koenigsmark also referred to "significant radiculopathies found at the time of this examination" but this was presumably a typographical error as there is no mention of any radicular findings in the body of his report.

the room and get on and off the examination table but due to tenderness in her knees and tenderness and pain in her lower back, she would have a "decreased ability to do heavy lifting . . . and carrying for long periods of time." (Id.). However, he stated that "an opportunity where she could be more sedentary and sit or alternate between sitting and standing could be considered." (Id.).

State agency physicians who reviewed the evidence in February and May, 2005 concluded that the plaintiff was capable of "light" level exertion with a sit/stand option, and was additionally limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ladders, ropes, and scaffolds, and needed to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and hazards.   (Tr. 245-51, 287-93).   These restrictions are consistent with the hypothetical question, although the ALJ was, if anything, slightly more restrictive.

On appeal, the plaintiff argues that Dr. McBrayer's opinion as a treating physician should have been entitled to controlling weight.  However, even the opinion of a treating physician is not entitled to controlling weight unless it is supported by sufficient signs, symptoms, and objective findings.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).  Dr. McBrayer's office notes, as found by the ALJ, do not provide very much detailed support for his extreme limitations.  For instance, in October, 2003, his objective findings were a positive straight leg raising test at 60 degrees on the left and pain on range of motion testing of the back.  (Tr.

07-278  Rose E. Johnson

307).  The patient denied any significant radicular pain.  (Id.).  Office notes in 2005

refer mainly to an exacerbation of breathing problems and a dog bite, rather than

intractable pain.  (Tr. 300-2, 358-9).  The notes do indicate that the plaintiff was

having breathing problems that year, but, according to her testimony, she did not

stop smoking until 2006.  (Tr. 402).  There are also some inconsistencies in Dr.

McBrayer's statements, such as his November, 2006 communication that his patient

could tolerate dust, smoke, and fumes (Tr. 363), as well as his statement that Dr.

Gilbert wanted to perform surgery on her lower back (Tr. 306).  In addition, his

assertion that she had no useful ability to deal with the public (Tr. 299) is at odds

with the plaintiff's own testimony (Tr. 401).  Under the circumstances of this case,

a reasonable fact finder could have concluded that Dr. McBrayer's opinions were

not binding.  Moreover, the ALJ gave a detailed rationale for so finding, meeting the

standard set out in Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th

Cir. 2004).[3]

The plaintiff has also submitted new evidence from Dr. McBrayer for the first

time as an attachment to a supplementary motion for summary judgment.  The

evidence consists of a letter dated January 15, 2008, approximately nine months

after the April 25, 2007 administrative decision.  The letter states that the plaintiff

---

[3]The ALJ also considered the effects of the plaintiff's obesity in detail pursuant to
Social Security Ruling 02-1p.  (Tr. 22-3).

15

07-278  Rose E. Johnson

has difficulty obtaining medication for her condition, needs to be referred to specialists, and again provides a conclusory statement that she is "totally disabled and will not be able to return to work." <u>Plaintiff's Motion to Supplement Motion for Summary Judgment</u>, Docket Entry No. 11, p. 3.  Although the plaintiff suggests that this evidence is both new and material, no good cause has been given for failing to submit it at an earlier date, a requirement for obtaining a remand for additional consideration.  <u>Cline v. Commissioner of Social Security</u>, 96 F.3d 146, 148-9 (6th Cir. 1996).  Moreover, its materiality is dubious since it lacks the objective findings which would be needed to support the physician's opinion of disability.  Finally, although the plaintiff suggests that the letter shows a deterioration of her condition, evidence of a subsequent deterioration or change in condition subsequent to the defendant's decision does not provide basis for a remand.  <u>Wyatt v. Secretary of Health and Human Services</u>, 974 F.2d 680, 685 (6th Cir. 1992).

The decision will be affirmed.

This the 30th day of June, 2008.



**Signed By:**

<u>*G. Wix Unthank*</u>

**United States Senior Judge**

16